UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEM STEVEN ACKERMAN,   )<br> )<br>**The Old Parsonage, Norwich Rd,** )<br>**Longstraton, Norwich NR15 2PX** )<br> )<br>              Petitioner,   )<br> )<br>v.                             )<br> )<br>SARAH MARIE CARTER,         )<br> )<br>**Serve:**                    )<br> )<br>  **306 E. 4th Street**       )<br>  **Willow Springs, MO 65793** )<br> )<br>           *or*               )<br> )<br>  **646 S. Wildan Ave**       )<br>  **Springfield, MO 65802**   )<br> )<br>              Respondent.    )  | Case No. _____ |

**PETITION FOR RETURN OF CHILD
UNDER THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF
INTERNATIONAL CHILD ABDUCTION AND THE INTERNATIONAL
CHILD ABDUCTION REMEDIES ACT**

Petitioner Matthew Ackerman ("Ackerman"), through counsel, petitions this Court for the return of his son N▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("N") to the United Kingdom, the country of N's habitual residence for the last three years. In support of his petition, Ackerman states as follows:

1

## Nature of the Claim

1. This action arises under the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 ("The Convention," a copy of which is attached to this Complaint as Exhibit A), as implemented in the United States through the International Child Abduction Remedies Act (hereinafter "ICARA"). 22 U.S.C. § 9001 *et seq*.

2. The objects of The Convention are "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." The Convention art. 1.

3. The Convention applies to "any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years." The Convention art. 4.

4. For the purposes of The Convention, "rights of custody" include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." The Convention art. 5.

5. The removal of a child from a Contracting State is "wrongful" under the Convention, where:

a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The Convention art. 3.

6. "Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, *the authority concerned shall order the return of the child forthwith.*" The Convention art. 12 (emphasis added).

7. The Convention and ICARA "empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4).

8. The Convention came into effect between the United States and the United Kingdom on July 1, 1988.

3

## Parties, Jurisdiction, and Venue

9. Ackerman is a citizen of the United States and a resident of the United Kingdom, where he has lived for the last three years.

10. Respondent Sarah Marie Carter ("Carter") is a citizen of the United States and, until October 2019, was a resident of the United Kingdom, where she had lived for the last three years.

11. Ackerman and Carter were married in the United States on August 21, 2004. A copy of their marriage license is attached to this Petition as Exhibit B.

12. Ackerman and Carter have one child together, N, who was born in the United States on ▇▇▇ 2013. A redacted copy of N's birth certificate is attached as Exhibit C.

13. In October 2016, Ackerman, Carter, and N relocated from the United States to the United Kingdom, where the family lived for the next three years.

14. Ackerman and Carter's marriage began to deteriorate after the family moved to the United Kingdom.

15. On July 20, 2019, Carter told Ackerman she wanted to separate.

16. Ackerman began having panic attacks and tried unsuccessfully to obtain mental health treatment of the next few days.

17. Ackerman suffered an acute psychotic episode on July 23, during which he shoved Carter, causing her to fall and strike her head.

18. Thankfully, Carter she was not seriously injured from the fall.

19. Carter called the police after the altercation, and Ackerman was arrested for assault.

20. Still suffering from his acute psychotic break, Ackerman struck or attempted to strike a nurse and two police officers following his arrest.

21. While Ackerman was in custody, Carter moved herself and N out of the family's apartment obtained a restraining order preventing Ackerman from contacting her directly.

22. The restraining order does not prohibit contact between Ackerman and N.

23. Ackerman was prescribed antipsychotic medication and released from custody after a psychiatric evaluation determined he was no longer a danger to himself or others.

24. Accepting responsibility for his actions, Ackerman pleaded guilty to four counts of assault and received 18 months' probation.

25. He is able to travel during his probation, but Ackerman may not permanently leave the United Kingdom until his probation is completed.

## Status of the Petitioner and Child

26. In early October 2019, Carter absconded with N and removed him to the United Stated without Ackerman's knowledge or consent.

27. At the time of his removal, N was a "habitual resident" of the United Kingdom within the meaning of Article 3 of The Convention because he had been living continuously in the United Kingdom for the three years immediately preceding his removal.

28. At the time of N's removal from the United Kingdom, Ackerman had "rights of custody" to N under the law of England and Wales, which provides in pertinent part, "where a child's father and mother were married to each other at the time of his birth, they shall each have parental responsibility for the child." Children Act of 1989, § 2(1), a copy of which is attached as Exhibit D.

29. Under the law of England and Wales, Ackerman retained his rights of custody even while in police custody. *See In re A* (a child) [2004] 1 FLR 1 FD, at 6, a copy of which is attached as Exhibit E.

30. Under the law of England and Wales, a holder of parental responsibility has a right to veto the removal of his child from the jurisdiction. *See In re D* (a Child) [2006] UKHL 51, ¶¶30-31, a copy of which is attached as Exhibit F.

31. In fact, it is a criminal offence in England and Wales for a parent to remove a child from the United Kingdom without the consent of each parent with parental responsibility or the leave of the court. Child Abduction Act 1984, sec. 1, a copy of which is attached as Exhibit G.

32. Ackerman was actually exercising his rights of custody within the meaning of Articles 3 and 5 of The Convention when Carter wrongfully removed him without Ackerman's knowledge or consent.

## Removal of Child by Respondent

33. Carter wrongfully removed N from the United Kingdom sometime in early October 2019.

34. On information and belief, Carter and N are presently residing with Carter's parents in Willow Springs, Missouri, or with Carter's brother in Springfield Missouri.

35. Ackerman has attempted to contact N through counsel and extended family members since N's removal from the United Kingdom, but Carter has prevented all contact between Ackerman and his son.

36. While Ackerman is not permitted to contact Carter directly due to her restraining order, there is no court order prohibiting him from seeing or communicating with his son, nor any order granting Carter sole custody of N.

37. Nonetheless, Carter has refused requests by Ackerman's counsel and brother to facilitate a telephone call or video conference between N and Ackerman.

38. Ackerman has not seen or communicated with N since Carter wrongfully removed him from the United Kingdom in early October.

39. Carter is now and has been wrongfully retaining N in the United States without Ackerman's permission or a court order from N's country of habitual residence.

40. On information and belief, Carter has not initiated divorce or custody proceedings in the United States.

41. This Court is requested to stay any state court case which may now be proceeding or which may hereafter be filed concerning the custody of N, as required by Article 16 of The Convention.

42. Ackerman also seeks a preliminary order directing Carter to permit reasonable aural and visual communication between Ackerman and N during the pendency of this action.

43. Pursuant to Article 26 of The Convention, the Court should order Carter to pay necessary expenses incurred by or on behalf of Petitioner, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the Petitioner, and those of returning the child to the United Kindgom.

8

WHEREFORE, Petitioner respectfully requests that this Court grant him the following relief:

a. A preliminary order directing Carter to permit reasonable aural and visual communication between Ackerman and N during the pendency of this action, to be facilitated by Ackerman's brother;

b. An order directing Carter to return N to the United Kingdom within seven days, where N shall remain until such time as a court of competent jurisdiction in N's country of habitual residence makes a determination regarding N's custody;

c. An order directing Carter to pay necessary expenses incurred by or on behalf of Petitioner, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the Petitioner, and those of returning the child to the United Kindgom; and

d. Such other relief as the Court deems just and proper.

Respectfully submitted,

**TGH LITIGATION LLC**

/s/ J. Andrew Hirth
J. Andrew Hirth, No. 57807
28 N Eighth St, Suite 500
Columbia, MO 65201
(573) 256 – 2850
andy@tghlitigation.com
*Counsel for Petitioner*